## KHOODA v. WALLACE et al.
### Civ. No. 378–D.

District Court, E. D. Illinois.

Jan. 5, 1944.

Petitioner, pro se.

No appearance for respondent.

EVANS, Circuit Judge.

Petitioner seeks a writ of habeas corpus, in forma pauperis. He is now confined in the Menard Institution for the Criminal Insane. He has been lodged in an Illinois insane institution for the past twelve years, by virtue of a commitment of the criminal court of Cook County, which states, it was found by a jury that petitioner had committed the acts charged in the indictment, but at the time of the commission of said acts he was a lunatic, and added, if he recovered from such lunacy he should be placed in the custody of the sheriff "upon the indictment until said indictment is disposed of, or until the said Baba Khooda shall be discharged by due process of law."

The petition which he has filed here is the identical one which was filed in the Illinois Supreme Court, and there denied. He says he also filed it with District Judge John P. Barnes, who returned it because Menard was not in his jurisdiction. He also filed it with Judge Sbarbaro of the Criminal Court in Chicago, June 10th, but has received no word from this court.

The crime with which he was charged does not clearly appear but his story seems to be that he is Assyrian by birth and did not speak English well at the time of the trial (he has since learned it well, in the mental institution). He came to the United States with his wife and child, where his wife's folks caused them to separate. A divorce was granted, after which he went one day to get his child from his ex-wife and his ex-brother-in-law assaulted him with a stove lid and hit him on the head, causing a gash which required fifteen stitches. This was the blow which made him temporarily (he says for seven months) irrational. In alleged self-defense he took out a pocket knife and slashed his brother-in-law, doing a rather extensive bit of slashing. He says his deranged mental condition made him disrespectful in court and he seems to think he was guilty of contempt of court, but the mental irresponsibility accounts, says he, for this breach of respect.

He appends as exhibits, letters from his sisters and nieces, stating they would be glad to have him in their homes and care for him. The letters are touching and evidence a nice sentiment.

█ The petition is entitled "In the United States Court of Appeals." This court has held it has no original jurisdic-

tion of habeas corpus petitions. But petitioner also entitled it—To the Honorable Judge in the United States Court of Appeals—so it could be considered as an application to an individual judge. I hold it is sufficient.

■ I think it clear that this petitioner, who believes himself sane, should have some remedy to test that belief. The Illinois Statute so provides:

Chapt. 91½, Sec. 26. Habeas Corpus. "Every person confined as mentally ill shall be entitled to the benefit of the writ of habeas corpus, and the question of his mental illness shall be decided at the hearing, and if the court decides that the person is mentally ill such decision shall be no bar to the issuing of other writs whenever it shall be alleged that such person has recovered; and if the person is adjudged not mentally ill, on presentation of a certified copy of said judgment to the county court where the commitment order was entered, such court shall rescind and set aside the judgment of commitment."

It is therefore apparent that the State of Illinois provides a remedy, constant and continuous, to one held committed as mentally ill. Since such remedy is available in the state courts, it would require a most unusual fact situation to justify a Federal Court in intervening. American Jurisprudence, "Habeas Corpus," Sec. 84. I do not say that in no case should a Federal Court act. And this case presents facts which appeal strongly for relief.

Petitioner points out that such a writ has been denied by the Illinois Supreme Court, and one was filed in the County Court in June and is still unacted on. Perhaps the court's calendars are congested and this cause has not been reached. Perhaps a writ of mandamus is needed to compel action. Under the statute there is no bar to repeated attempts to obtain a hearing on sanity by successive applications. Since, as petitioner alleges, the county court application is still pending, and since he may make repeated applications, I can not say that petitioner is without recourse in the state courts.

It is hard to deny a confined person his plea for a hearing to determine his sanity—especially when the petition presents a convincing story of family strife, violent injury producing temporary insanity, and alleged recovery therefrom. Twelve years of confinement is a long time to go without a hearing on the merits of his claim that he is no longer insane. If it be true as alleged, that during that period he has learned to speak and write English, and if he prepared the papers here on file, he has made out a prima facie case of recovery from insanity and it would be no exaggeration to say that he has made out a good deal more than a prima facie case.

But the determination of sanity is a serious and difficult task, and a determination which the Federal Court should not undertake where a state judgment is involved and where a state statute provides procedure for rectification of such judgment, and belated though it may appear to be, there is pending a petition in a state court of competent jurisdiction wherein petitioner's sanity is directly in issue.

Such pleas should be carefully considered and not lightly rejected. Nor should they be long delayed where, as here, the applicant has spent twelve years in confinement.

I feel that petitioner should first press his pending application in the State Court to a hearing.

Leave is granted for the withdrawal of the petition.